## JOE FREEMAN v. STATE.

No. A-9754. May 21, 1941.

(113 P. 2d 843.)

138

C. S. McCuistion, of Lawton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Joe Freeman, was charged in the county court of Comanche county with the offense of possession of intoxicating liquor, was tried, convicted and sentenced to serve 30 days in the county jail and to pay a fine of $150 and costs, from which judgment and sentence an appeal has been taken to this court.

The defendant presents only one assignment of error, to wit: That the court erred in overruling his motion to suppress the evidence for the reason that the search warrant was directed "to any sheriff, constable, marshal or policeman in the county of Comanche," and the same was served by officers of the State Bureau of Identification and Investigation without the aid, consent or knowledge of any officer of Comanche county.

Defendant offered no evidence in his own behalf, but relied for a defense solely upon the facts as related by the raiding officers, together with the affidavit for search

warrant and search warrant which were admitted in evidence upon the motion to suppress.

The proof showed that three state officers went to a justice of the peace at Lawton and procured two search warrants, one of the search warrants describing the home and premises of the defendant, Joe Freeman, and the other describing the house and two lots adjoining the home of the defendant, Joe Freeman. The owner of these premises was given as John Doe.

These two search warrants were directed "to any sheriff, constable, marshal or policeman in the county of Comanche." The state officers took the two warrants and, without consulting any of the local officers, went first to the home of Joe Freeman and searched it without finding any liquors. The house adjacent to Freeman's was locked and unoccupied at that time. With reference to this place, Officer Walsh testified:

"A. Previous I had asked Mr. Freeman who was living in this place, he told me that a man working on some job rented the place in the winter time and went on the road in the summer time. I asked if he had the keys, he said, 'No.' All of the gates were locked, fastened up with ropes, excepting the gate leading from Freeman's home leading to the back door of this house. This is directly north of his residence, which had a lock on the gate and on the back door. He finally gave us two keys to the place. We found that they were not the proper keys. Mr. Finley made Freeman produce the proper keys, telling him we were going to break in the place, that he might as well give us the keys anyway. Q. He gave you the keys then? A. Yes, he did. Q. What, if anything, did you find? A. We found a quantity of whisky, wine, and gin. Q. How much, if you recall? A. In a rough count, there was some place around twelve, fourteen, maybe 1,600 bottles. I would say over 1,200 bottles."

It is not necessary to discuss the question raised by the defendant, as this proof shows that the defendant did not claim the ownership or possession of the house where the liquors were found. The defendant did not testify either on the motion to suppress the evidence or in the trial; but in his statement to the officers, he denied any ownership or possession of the house where the liquor was found.

This court has many times held that the constitutional provision guaranteeing one immunity from unlawful search and seizure is personal to the occupant of the premises involved; and one accused of crime will not be heard to object that a search is unlawful where the accused denies that he owns or has possession of the property or premises searched. Tacker v. State, 72 Okla. Cr. 72, 113 P. 2d 394; Rogers v. State, 72 Okla. Cr. 123, 113 P. 2d 606; Chanosky v. State, 52 Okla. 476, 153 P. 131; Hall v. State, 39 Okla. Cr. 254, 264 P. 221, 222.

In this case the house where the liquor was found is not the home or within the curtilage of defendant's home, as it is on an entirely different lot and enclosed by fence. The defendant stated that it was being rented by a man who was away for the summer; but defendant produced the keys to the house. The facts are similar to the case of Hall v. State, supra, wherein this court stated:

"It is insisted that much of the state's evidence was incompetent, as having been procured by an illegal search of the house where the mash was found. The house was no part of defendant's residence, or the curtilage or immediate surroundings, according to defendant's own testimony, was not in his possession at the time, but was rented to one Miller, and he was not in a position to complain. Penrod v. State, 38 Okla. Cr. 46, 258 P. 1052."

By reason of these facts, the alleged illegality of the search is a question that may not be raised by the defend-

ant; therefore, the county court of Comanche county did not err in overruling the motion of the defendant to suppress the evidence.

The judgment of the county court of Comanche county is accordingly affirmed.

BAREFOOT, P. J., concurs. DOYLE, J., absent.