## HOOD v. STATE.

No. A-11069.   Jan. 18, 1950.

(213 P. 2d 883.)

Frank Leslie, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J. Homer Gafford and Jacqueline Hood were charged in the court of common pleas of Tulsa county with possession of nine pints of tax-paid whisky. They filed a motion to suppress, with was overruled, counsel then filed a motion for severance, praying that the defendants be tried separately, which was overruled, and thereafter defendants were tried before a jury, and neither testified. At the close of the state's case, each defendant demurred to the evidence, and Homer Gafford's demurrer was sustained, but the demurrer of Jacqueline Hood was overruled. The jury found said defendant guilty of possession of intoxicating liquor as charged and fixed her punishment at 30 days imprisonment and a fine of $250.

For reversal of this case defendant Jacqueline Hood sets up 17 assignments of error in petition in error, which are argued together.

The Attorney General has orally expressed to the court his intention not to file a brief because of the strength of the defendant's position, both from the evidentiary as well as the legal standpoint.

Counsel for defendant contends that the court erred by failure to suppress the evidence, contending that it was obtained by illegal search and thus violated art. 2, sec. 30, of the Bill of Rights. On hearing of the motion, the search warrant involved was introduced in evidence by defendant, and Jacqueline Hood and Homer Gafford were set out therein as living in a four or five room house at 707 North Quincy Street, Tulsa. The return shows that search was made of the premises described and that

warrant was served on one Claudene Ponder, and nine pints of tax-paid whisky found in her possession.

The evidence of Roy Rains and Carl Teenor, deputies, called by defendant in support of motion to suppress, discloses that they and other officers went to the address set out in the warrant. They did not find the defendants at the address, but found the place occupied by Claudene Ponder. They found one room at the back padlocked. Mrs. Ponder disclaimed having a key, but advised the offices where they might obtain a key, and Deputy Teenor went next door at 709 North Quincy street, and there got a key. The defendant Jacqueline Hood lived there, and she gave the deputy the key sought. He did not have a warrant for the search of 709 North Quincy. The key obtained opened the lock to a room of the house described in the search warrant. The room contained what the officers described as "junk", the nine pints of whisky and empty whisky cartons. Deputy Teenor stated that they took the whisky and advised Mrs. Ponder that they would notify her if they needed her. There was no evidence on motion to suppress as to any further connection of defendants with the room at 707 North Quincy.

The defendant cannot complain of the evidence obtained by authority of the search warrant in question for the reason that, on motion to suppress, the evidence disclosed that the property searched was not occupied or under the control of defendant, and there was no evidence to connect defendant with the room except the possession of a key to the lock in question. The defendant did not deny having a key and readily delivered the same to the officer without search on his part.

Of course, the warrant in question calling for search of 707 North Quincy street could not be used as a basis

for search of 709 North Quincy Street. This court decided that issue in Scogin v. State, 61 Okla. Cr. 348, 68 P. 2d 111, and Flowers v. State, 88 Okla. Cr. 252, 202 P. 2d 233, but the key was not mentioned in the motion to suppress, the liquor was not obtained at any address other than the one mentioned in the search warrant, and it is not necessary to determine whether or not the defendant was assumed to have delivered the key to the officer under coercion, as argued, it not being to any room in defendant's residence. This court has many times held that the constitutional provision guaranteeing immunity from unlawful search and seizure is personal, and one accused will not be heard to object that search of property or premises of a third person is a violation of his constitutional rights. Plumlee v. State, 78 Okla. Cr. 201, 146 P. 2d 139, and Love v. State, 83 Okla. Cr. 403, 177 P. 2d 846. The officers had authority to break the lock at 707 North Quincy street, and did not have to bother with seeking a key.

The case came on for trial May 17, 1948, and the state was given permission over the objections of the defendant to endorse the name of Claudene Ponder as a witness. The state first used Deputies Teenor and Rains, whose evidence on direct examination was substantially the same as on motion to suppress, except that it was brought out that there was another lady and also some children at Mrs. Ponder's home when they searched it. The evidence of Deputy Wisenhunt brought out nothing additional.

The state called Claudene Ponder, who testified that she lived at 707 North Quincy, that she rented from Dorothy Lane Hood and paid her rent at an address on North Victor; that the officers on February 3, 1948, searched her home and found nine pints of whisky in a room that

was locked with a padlock, that the defendant Jacqueline Hood, who lived next door, had some things stored in the room consisting of a white ice box, card table, her little boy's wagon and some clothing. Witness further testified that her husband also had a key to the room, had a tool box in there along with some other things, including the whisky in question. She disclaimed that she and defendant visited back and forth, and denied that any one with a key to the locked room could have gone in and out when she would not be at home, testifying that there was but one way to get to the room, and that was through the back and front doors to her home, and that she always locked her doors on leaving. She denied having a back porch and denied that other persons had a key.

The state sought to impeach this witness on the ground of surprise. The court permitted this over the objections of the defendants, although it was by the county attorney admitted that when he questioned the witness just prior to calling her as a witness, and being the first time he had talked with her, that he discovered that witness would testify as she subsequently did. This is stipulated in the case-made. But the court permitted the state to ask its witness leading questions and impeaching questions, and two of the officers were permitted to testify that Mrs. Ponder had told them that Jacqueline Hood had a key to the room and that the Hoods reserved the room. If such was so they were thus attempting to get hearsay testimony before the jury, as they knew what Mrs. Ponder would testify to prior to her taking the witness stand.

In Bond v. State, 90 Okla. Cr. 110, 210 P. 2d 784, 785, this court held:

"When a party places a witness upon the stand with notice that such witness will testify adversely to such party, he cannot impeach the witness in any manner."

See also Flauhaut v. State, 66 Okla. Cr. 417, 92 P. 2d 587, and Sturgis v. State, 2 Okla. Cr. 362, 102 P. 57.

At the close of the evidence the defendants demurred, setting up failure of the state to show that either of the defendants had possession of the whisky, and alleging that the state proved that the whisky was owned by the husband of Mrs. Ponder. The demurrer was sustained as to Homer Gafford, but overruled as to Jacqueline Hood. The demurrer should have been sustained as to Jacqueline Hood. The only evidence that would in any way implicate her was that she had a key to the room at 707 North Quincy street, where she had household articles stored. The uncontradicted evidence offered by the state shows that the whisky was owned by a Mr. Ponder; that Ponder had a key and that Jacqueline Hood rarely visited the storage room where the whisky was found, and could not even enter the room until admitted to the house at 707 North Quincy by the occupants, who had control.

Other errors are pointed out, particularly concerning the instructions to the jury, but it is unnecessary to consider the other specifications of error, there not having been sufficient competent evidence for the jury to consider.

For the errors pointed out, the conviction is reversed and the cause remanded.

JONES, P. J., and BRETT, J., concur.